UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRUCE BOOKBINDER<br>Plaintiff<br><br>v.<br><br>FOUNTAIN POWERBOATS, INC.<br>Defendant | C.A. No.: 07-283T |

**ANSWER OF FOUNTAIN POWERBOATS INC.**

NOW COMES Fountain Powerboats, Inc. ("Fountain") by and through its attorneys and Answers the Complaint (the "Complaint") of plaintiff Bruce Bookbinder (the "Plaintiff") as follows:

1. Fountain is without knowledge or information sufficient to form a belief as to the truth of the allegation contained in Paragraph 1 of the Complaint, and therefore denies the same. By way of further answer, Fountain admits that Plaintiff's warranty registration lists "83 Vermont Avenue, Warwick, Rhode Island," as his address.

2. Admitted.

3. Fountain is without knowledge or information sufficient to form a belief as to the truth of the allegation contained in Paragraph 3 of the Complaint and therefore denies the same.

4. Admitted.

5. Admitted that the 38' Sportfish Center Console Open Bow model is capable of speeds of 72 miles per hour or greater if operated properly. Admitted that the 38' Sportfish Center Console Open Bow model holds the speed record for center console fishing boats. Except as expressly admitted, Fountain denies the remaining allegations contained in Paragraph

5 of Plaintiff's Complaint and in each and every other paragraph of the Complaint where the same allegations are incorporated by reference.

6. Fountain admits that Plaintiff ordered a 38' Sportfish Center Console Open Bow powerboat with a fourth engine and other customization and that he took delivery of the Boat, Serial No. FGQ8K010I607 (the "Boat"), on or about September 22, 2006 at Fountain's North Carolina factory. By way of further answer, Fountain states that to the best of its knowledge, Plaintiff's agent took delivery of the Boat on Plaintiff's behalf. Fountain is without knowledge and information sufficient to form a belief as to the reasons that Plaintiff ordered the Boat and, therefore, denies the portions of Paragraph 6 that pertain to the basis for Plaintiff's decision to order the Boat.

7. Admitted.

8. Paragraph 8 contains a legal conclusion to which no response is required. To the extent that a response is required, Fountain admits that Paragraph 8 summarizes the allegations contained in Plaintiff's Complaint, but denies liability for the same.

9. Denied. By way of further answer, Fountain states:

a. Fountain did not install the propellers; instead, they were provided with the Boat. At the time the Boat was shipped, one of the propellers was on back order; accordingly, one propeller was shipped separately. Upon information and belief, the dealership, Sundance Marine, exchanged the propellers two times.

b. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (b) of Paragraph 9 and therefore, denies the same. Fountain denies that the alleged defect existed when it delivered the Boat to Plaintiff's agent.

c. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (c) of Paragraph 9 and, therefore, denies the same. By way of further answer, Fountain states that rust is a matter of customer maintenance, and is not a manufacturing issue.

d. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (d) of Paragraph 9 and therefore, denies the same. By way of further answer, Fountain states that the engine/powertrain is not part of Fountain's warranty. There are a number of reasons why the RPMs could be below specifications, including but not limited to: improper trim, improper propellers, loading of the Boat, and the quality/quantity of fuel used.

e. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (e) of Paragraph 9 and therefore, denies the same. By way of further answer, Fountain states that the dealership, Sundance Marine, replaced the bilge-pumps pursuant to the terms of the warranty at no cost to Plaintiff.

f. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (f) of Paragraph 9 and therefore, denies the same. Fountain denies that the Boat had "over 1,000 gallons of fresh water in hull and numerous items were under water, including but not limited to batteries, coast guard kits, macerator pumps, entire shower room, flares, life jackets, life rafts" when it delivered the Boat to Plaintiff's agent. By way of further answer, Fountain states that before the Boat left its factory, the bilge pumps had been tested and they functioned correctly. By way of further answer, Fountain states that when the dealership replaced the bilge-pumps, it made no reference to wiring issues. By way of

further answer, Fountain also states that fresh water in the hull indicates that the Boat was stored outdoors with the drain plug left in the Boat, which prevents water from draining from the hull.

g. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (g) of Paragraph 9 and therefore, denies the same. Fountain denies that the life raft was underwater when it delivered the Boat to Plaintiff's agent; Fountain also denies that the life raft had begun collecting mold when it delivered the Boat to Plaintiff's agent. By way of further answer, Fountain states that the life raft is not covered by its "Express Limited Transferable Warranty." Fountain also states that the Boat should not have been stored with the drain plug installed and that bilge pumps are not intended to be the method of draining water through storage of the Boat.

h. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (h) of Paragraph 9 and therefore, denies the same. By way of further answer, Fountain states that it is aware that a bracket came into contact with upholstery, and that the upholstery was repaired by the dealership. Upholstery is not covered by the terms of Fountain's "Express Limited Transferable Warranty," and was replaced as a courtesy.

i. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (i) of Paragraph 9 and therefore, denies the same. By way of further answer, Fountain states that the seals were replaced by the dealership pursuant to the terms of Fountain's warranty.

j. The door to the head is not advertised or promoted as being water-tight.

k. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (k) of Paragraph 9 and therefore, denies the

same. Fountain denies that this alleged defect existed when it delivered the Boat to Plaintiff's agent. By way of further answer, Fountain states that it received a photograph dated December 4, 2006, showing several 12-ounce beer cans in the Boat's locker compartment, but that Plaintiff did not file a warranty claim with regard to this allegation.

l. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (l) of Paragraph 9 and therefore, denies the same. Fountain denies that this alleged defect existed when it delivered the Boat to Plaintiff's agent. By way of further answer, Fountain states if the unit is installed at the factory, then the unit is initially calibrated during Fountain's testing phase. The auto-pilot function should be tested by the dealership prior to delivery, and re-calibrated if necessary.

m. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in subparagraph (m) of Paragraph 9 and therefore, denies the same. Fountain denies that this alleged defect existed when it delivered the Boat to Plaintiff's agent. By way of further answer, Fountain states that, pursuant to the terms of its "Express Limited Transferable Warranty," damage caused by improper mating of the Boat to the trailer voids Fountain's warranty.

n. Fountain denies that the paint job was not according to specifications and that the paint was applied in an un-workmanlike manner. Fountain is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff had the Boat repainted and therefore, denies the same.

10. Fountain is without knowledge and information sufficient to form a belief as to the truth of the matter asserted in Paragraph 10, and therefore denies the same.

11. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in Paragraph 11, and therefore denies the same.

12. Fountain denies that the Boat was defective and damaged, and further denies that Plaintiff notified it of the alleged defects. By way of further answer, Fountain states that it received notification from the dealership, Sundance Marine, informing it that the bilge pump, upholstery, and seals had been replaced, and that the propellers had been exchanged.

13. Denied.

14. Fountain is without knowledge or information sufficient to form a belief as to the truth of the matter asserted in Paragraph 14, and therefore denies the same.

**COUNT I - BREACH OF CONTRACT**

15. Fountain incorporates by reference the responses, allegations and affirmative defenses set forth in its Answer.

16. Denied.

17. Denied.

**COUNT II - NEGLIGENCE**

18. Fountain incorporates by reference the responses, allegations and affirmative defenses set forth in its Answer.

19. This paragraph contains a statement of law to which no response is required. To the extent that a response is required, Fountain denies the same.

20. Denied.

21. Denied.

**COUNT III - BREACH OF EXPRESS WARRANTY**

22. Fountain incorporates by reference the responses, allegations and affirmative defenses set forth in its Answer.

23. This paragraph contains a statement of law to which no response is required. To the extent that a response is required, Fountain denies the same.

24. Fountain denies that it made any warranties, express or implied, other than those set forth in the terms of its "Express Limited Transferable Warranty." By way of further answer, Fountain has disclaimed all warranties other than those set forth in its "Express Limited Transferable Warranty." By way of further answer, Fountain also states as follows:

a. The Boat was built according to the specifications provided by the dealership.

b. This allegation contradicts the express terms of Fountain's "Express Limited Transferable Warranty," which states that the warranty does not apply to "[t]he achievement of any particular performance."

25. Denied.

**COUNT IV - BREACH OF IMPLIED WARRANTIES**

26. Fountain incorporates by reference the responses, allegations and affirmative defenses set forth in its Answer.

27. This paragraph contains a statement of law to which no response is required. To the extent that a response is required, Fountain admits that R.I. Gen. Laws § 6A-2-314 states that the implied warranty of merchantability applies to contracts for sale if the seller is a merchant with respect to goods of that kind. By way of further answer, R.I. Gen. Laws § 6A-2-314 states that the implied warranty of merchantability may be excluded or modified. By way of further

answer, the alleged breach of the implied warranty of merchantability is governed by Fountain's "Express Limited Transferable Warranty." With respect to the alleged implied warranties, Fountain states as follows:

a. Fountain admits that the construction and assembly of the Boat is subject to the implied warranty of merchantability. Fountain is not responsible for trailers, storage, or delivery to the customer, and therefore, denies that the implied warranty of merchantability applies to those alleged activities. By way of further answer, Fountain states that the alleged breach of the implied warranty of merchantability is governed by the terms of its "Express Limited Transferable Warranty." By way of further answer, Fountain states that storage of the Boat is subject to prudent owner practices, including removal of the drain plug. By way of further answer, Fountain states that when Plaintiff's agent accepted delivery, the Boat passed without objection in the trade under the contract description.

b. Fountain admits that the manufacture of the Boat is subject to the implied warranty of merchantability. Fountain is not responsible for storage or use of the Boat, and therefore, denies that the implied warranty of merchantability applies to those alleged activities. By way of further answer, Fountain states that the alleged breach of the implied warranty of merchantability is governed by the terms of its "Express Limited Transferable Warranty." By way of further answer, Fountain also states that when Plaintiff's agent accepted delivery of the Boat, the Boat was fit for the ordinary purpose for which it was used.

c. Denied. By way of further answer, Fountain states that its "Express Limited Transferable Warranty" does not apply to the "achievement of any particular performance or fuel consumption." By way of further answer, Fountain also states that the Boat performed within its performance parameters, and that upon information and belief, the Boat

would perform within Fountain's performance parameters when operated properly. Any inability to attain speeds in excess of 64 mph is the result of improper operation.

28. Denied.

**COUNT V - MAGNUSON-MOSS WARRANTY ACT**

29. Fountain incorporates by reference the responses, allegations and affirmative defenses set forth in its Answer.

30. This paragraph contains a statement of law to which no response is required. To the extent a response is required, Fountain admits that, with certain limitations, this Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 *et seq*, by virtue of 15 U.S.C. § 2310(d). By way of further answer, Fountain states that the provisions of the United States Code speak for themselves. By way of further answer, Fountain states that this matter is governed by the terms of its "Express Limited Transferable Warranty."

31. This paragraph contains a statement of law to which no response is required. To the extent a response is required, Fountain denies the same, putting Plaintiff to his proof.

32. This paragraph contains a statement of law to which no response is required. To the extent a response is required, Fountain denies the same, putting Plaintiff to his proof.

33. This paragraph contains a statement of law to which no response is required. To the extent a response is required, Fountain denies the same, putting Plaintiff to his proof.

34. This paragraph contains a statement of law to which no response is required. To the extent a response is required, Fountain states that it is without knowledge or information sufficient to form a belief as to the foundation of the basis of the bargain regarding Plaintiff's purchase of the Boat and therefore denies the same. By way of further answer, Fountain states

that it makes no warranties, express or implied, other than those set forth in its "Express Limited Transferable Warranty."

35. This paragraph contains a statement of law to which no response is required. To the extent a response is required, Fountain admits that Plaintiff has summarized a portion of 15 U.S.C. §2310(d)(1). By way of further answer, Fountain states that the provisions of the United States Code speak for themselves.

36. Denied.

**COUNT VI - BREACH OF OBLIGATION OF GOOD FAITH**

37. Fountain incorporates by reference the responses, allegations and affirmative defenses set forth in its Answer.

38. This paragraph contains a statement of law to which no response is required. To the extent a response is required, Fountain admits that R.I. Gen. Laws § 6A-1-203 states that every contract or duty under title 6A imposes an obligation of good faith in its performance or enforcement. To the extent that Fountain was subject to the obligation of good faith and fair dealing, Fountain denies that it breached that duty. By way of further answer, Fountain states that the provisions of R.I. General Laws speak for themselves.

39. Denied.

**AFFIRMATIVE DEFENSES**

BY WAY OF FURTHER ANSWER AND AFFIRMATIVE DEFENSE, Fountain states as follows:

**FIRST AFFIRMATIVE DEFENSE**

Fountain denies all allegations of liability.

**SECOND AFFIRMATIVE DEFENSE**

Some or all of Plaintiff's allegations, including but not limited to, Count VI, fail to state a claim for which relief may be granted.

**THIRD AFFIRMATIVE DEFENSE**

This matter may be governed by Admiralty Law, and Fountain reserves the right to assert any and all applicable admiralty defenses.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff is barred from recovery because of intervening, superseding causes.

**FIFTH AFFIRMATIVE DEFENSE**

Fountain has effectively disclaimed and/or limited some or all warranties, whether express or implied.

**SIXTH AFFIRMATIVE DEFENSE**

By way of affirmative defense, the terms and conditions of Fountain's "Express Limited Transferable Warranty" are applicable and govern this matter.

**SEVENTH AFFIRMATIVE DEFENSE**

By way of affirmative defense, no breach of warranty did, in fact, occur.

**EIGHTH AFFIRMATIVE DEFENSE**

By way of affirmative defense, Plaintiffs' claims are barred by Plaintiff's own misuse of the Boat.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff accepted delivery after he had a reasonable time in which to inspect the Boat.

**TENTH AFFIRMATIVE DEFENSE**

Fountain disputes the extent of the damages Plaintiff claims to have suffered and reserves the right to rely upon Plaintiff's failure to mitigate damages.

**ELEVENTH AFFIRMATIVE DEFENSE**

By way of affirmative defense, Plaintiffs' claims are barred by failure to give proper notice of the warranty claims as required by statute.

**TWELFTH AFFIRMATIVE DEFENSE**

By way of affirmative defense, Fountain is entitled to the state of the art defense.

**THIRTEENTH AFFIRMATIVE DEFENSE**

By way of affirmative defense, Fountain states that if Plaintiff suffered damages as alleged, which Fountain expressly denies, then the damages were caused by a third person(s) over whom Fountain had no control and for whom Fountain is not legally responsible.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Fountain reserves the right to assert that this matter is governed by the Laws of the State of North Carolina, and that defenses available under North Carolina law may apply to this case; such defenses include, but are not limited to, contributory negligence, and Fountain reserves the right to argue, by way of affirmative defense, that the negligence of the Plaintiff was greater than the alleged negligence of Fountain, and that this negligence of Plaintiff, contributed to the alleged damages and, therefore, Plaintiff is barred from recovery.

**FIFTEENTH AFFIRMATIVE DEFENSE**

By way of affirmative defense, Fountain states that Plaintiff was comparatively negligent and, therefore, the damages, if any, should be reduced in proportion to Plaintiffs own negligence.

**SIXTEENTH AFFIRMATIVE DEFENSE**

In accord with the terms of its "Express Limited Transferable Warranty," Fountain reserves the right to assert that venue is improper.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Fountain reserves the right to assert that this Court does not have jurisdiction pursuant to 28 U.S.C. §1332.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Fountain reserves the right to assert that this Court does not have subject matter jurisdiction over this case.

**NINETEENTH AFFIRMATIVE DEFENSE**

Fountain reserves the right to assert that, to the extent that the product referred to in the Plaintiffs' Complaint was altered or modified, Plaintiff may have no relief against Fountain Powerboats, Inc., pursuant to §9-1-32 of the Rhode Island General Laws.

**TWENTIETH AFFIRMATIVE DEFENSE**

Fountain reserves the right to raise further alternative defenses prior to trial, upon reasonable notice to opposing counsel.

**FOUNTAIN DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Date: September 10, 2007

Respectfully submitted,

Fountain Powerboats, Inc.
By and through its attorneys,

/s/ James A. Ruggieri
James A. Ruggieri, Esq. (#2828)
Samuel C. Bodurtha, Esq. (#7075)
Higgins, Cavanagh & Cooney, LLP
The Hay Building, 123 Dyer Street
Providence, RI 02903
Tel: 401/272-3500
Fax: 401/273-8780

Pro Hac Vice Counsel:
Dean B. Eggert, Esq., NH Bar #742
Alison M. Bethel, Esq., NH Bar #15264
Wadleigh, Starr & Peters, PLLC
95 Market Street
Manchester, NH 03101
Tel: 603/669-4140
Fax: 603/669-6018

## CERTIFICATE OF SERVICE

I do hereby certify that I caused a copy of the foregoing to be served on the following person on this date and in the matter specified herein through the Electronic Case Filing System of the United States District Court:

William E. O'Gara, Esq.
Pannone Lopes & Devereaux LLC
317 Iron Horse Way
Suite 301
Providence, RI 02903

Date: September 10, 2007

By: /s/ James A. Ruggieri